THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. 18 CR 833 |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| OMAR GARCIA, | ) | Judge Matthew Kennelly |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S COMBINED MOTION
FOR JUDGMENT OF ACQUITTAL**

The defendant, Dr. Omar Garcia, by his attorney, moves this Honorable Court, pursuant to the Federal Rule of Criminal Procedure, Rules 29(c)(1)-(2), 29(d)(1), acquit Dr. Garcia, in support thereof, he states the following:

**RULE 29**

A Rule 29 Motion requires the Court to distinguish between reasonable inferences and speculation. *United States v. Jones,* 713 F.3d 336, 340 (7th Cir. 2013). Moreover, the sufficiency of the evidence standard does not require the defendant to demonstrate that no evidence at all supports the conviction. *United States v. Rahman,* 34 F.3d 1331, 1337 (7th Cir. 1994) While a "mere modicum of evidence may satisfy a "no evidence" standard, it will not support a conviction beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307 (1979).

When reviewing a Rule 29 motion the court "must view the evidence 'in the light most favorable to the government to determine whether any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt.'" *United States v. Garcia*, 919 F.3d 489, 496 (7th Cir. 2019), quoting *United States v. Seidling*, 737 F.3d 1155, 1159-60 (7th Cir. 2013). Although deference is given to the government in evaluating the evidence "the height of the hurdle depends directly on the strength of the government's evidence." *United*

1

*States v. Jones*, 723 F.3d 336, 339 (7th Cir. 2013). The court must look to see if a reasonable juror could find guilt beyond a reasonable doubt, if the court doubts any reasonable juror could do so the court must acquit the defendant. *United States v. Garcia*, 919 F.3d 489, at 498.

In *Garcia*, the defendant was convicted on drug distribution charges. The defendant had participated in multiple telephone conversations with a known drug dealer. The police overheard the defendant and the drug dealer using what appeared to be code and saying multiple suspicious things to one another. The defendant was also seen entering two locations owned or used by the drug dealer to process and move drugs. The defendant was overheard discussing the quality and reputation of something but neither participant in the phone conversation said outright that the two were talking about narcotics.

The police stopped the defendant in his car after one of the defendant's meetings with the drug dealer. The defendant did not have any narcotics on him or in his car. The police searched the defendant's home with his consent, but no drugs were recovered. Later the drug dealer was arrested, and large amounts of cocaine were recovered on his properties. Both the defendant and the drug dealer were charged with distributing cocaine. At trial multiple police officers with decades of combined experience testified that Garcia and the drug dealer were likely using code and explained what the code probably meant. The officers testified to their interpretations that Garcia had gone to the drug dealer's home in order to test the purity of the cocaine and was worrying about his reputation in the market because he was originally unsatisfied with how pure the cocaine was. The phone calls and the interpretations by the officers were the only evidence offered at trial against the defendant.

The appellate court found insufficient evidence to convict Garcia and acquitted him on the cocaine distribution charges. The court noted that the "gut feelings and suspicions" of the

police officers and jurors were not enough to "relieve the government of the burden of offering sufficient evidence to prove guilty beyond a reasonable doubt." *Id*. Acquittal is permissible where, as in Garcia, the jury had speculated its way out of reasonable doubt. *Id*. The Seventh Circuit reversed, holding that the circumstantial evidence fell short of proof beyond a reasonable doubt on the charges against Garcia. *Id*. at 504.

## Introduction

Authorization is a requirement when writing a prescription for a patient. Handwritten notes do not equate to authorization. Where no evidence exists to prove that a doctor authorized a prescription or even wrote a prescription, in connection to Medicare Fraud, guilt cannot be charged. With respect to §1347, no reasonable jury could conclude beyond a reasonable doubt that Dr. Garcia (i) had any intent to defraud; (ii) made any misrepresentation; or (iii) knew his conduct was unlawful. Similarly, with respect to §1035(a)(2), no reasonable jury could conclude beyond a reasonable doubt that Dr. Garcia (i) made any false writing or document; (ii) knew he made any false writing or document; or (iii) made any false entries.

There is insufficient evidence that Dr. Garcia schemed to defraud, intended to defraud, or made false writings or documents to Medicare in this matter when there is no evidence that Dr. Garcia authorized or wrote any prescriptions for allergen tests.

## Background

The Government charged Dr. Garcia with healthcare fraud, claiming he attempted to obtain, by materially false and fraudulent pretenses, money and property owned by Medicare. In its indictment, the Government describes a specific scheme in which it alleges that Dr. Garcia provided authorization for diagnostic tests that were performed on Medicare beneficiaries in their homes and billed those tests to Medicare. Indictment ¶ 1f. The Government further alleged that

Dr. Garcia submitted fraudulent claims to Medicare, that five patients had a medical need for percutaneous allergen tests, and that Dr. Garcia prescribed and authorized these tests. *Id.* ¶ 3. Furthermore, the Government alleged that Dr. Garcia prescribed and authorized diagnostic tests after the tests had already been completed.

Each act in the indictment charged Dr. Garcia with "prescribing and authorizing" the diagnostic tests, and the Government's case was dependent on asking the jury to find that (1) a handwritten note, signed by Dr. Garcia, was enough to authorize the allergen tests and (2) that Dr. Garcia both authorized and prescribed multiple allergen tests. Even after testimony from two witnesses who both stated that handwritten medical notes cannot authorize diagnostic tests, the Government still pushed for the jury to use the handwritten notes in their deliberations.

**TRIAL**

The evidence at trial indicated that handwritten medical examination notes do not authorize diagnostic tests. First, the Government introduced testimony from Dr. Yoder. During his cross-examination, Dr. Yoder stated that a doctor's handwritten or medical note is not enough to authorize a prescription. He testified that a separate prescription would need to be written or electronically submitted. Further, Yoder confirmed that a nurse practitioner could prescribe and authorize medications and/or tests and even though he signed off on the medical examination notes.

Corroborating Dr. Yoder's testimony was nurse practitioner Francisco Banez. Banez testified that the handwritten examination notes did not give authorization for diagnostic tests. Further, Banez confessed that it was he who both authorized and prescribed the allergen tests and that he did so without first consulting Dr. Garcia. According to Banez, nurse practitioners have the authority to authorize and prescribe allergen tests without prior approval from doctors. Banez

further confirmed that doctors are allowed to rely on the findings of the nurse practitioner and that nurse practitioners are trained to diagnose and prescribe. Banez stated that he knew that tests were unnecessary, but that he never relayed that information to Dr. Garcia.

The testimony of Dr. Yoder and Banez was uncontradicted.

**I.    There is insufficient evidence for Dr. Garcia's guilt as found by the jury.**

There are sufficient examples to show that the evidence against Dr. Garcia fell short of what could support a finding of guilt beyond a reasonable doubt, the most important being the lack of any documentation proving Dr. Garcia authorized or wrote a prescription for the allergen tests. In *Garcia*, the Government had no evidence to link the defendant to the drug conspiracy and only relied on testimony from officers to decipher coded phone conversations. 919 F.3d at 492-94. Just like *Garcia*, the Government in this case does not have any evidence to directly link Dr. Garcia to the percutaneous allergen tests.

The Government did not submit sufficient evidence that would permit jurors to find that Dr. Garcia had authorized or prescribed the allergen tests. Without the Government introducing a prescription written by Dr. Garcia or any other legitimate documentation authorizing the tests, the evidence is just not there. The Government tried to create a theory that handwritten notes do authorize and prescribe these tests, but that is completely fabricated. There were two witnesses who testified that medical notes do not authorize or prescribe tests. First was Dr. Yoder and the second was nurse practitioner Francisco Banez. Dr. Yoder directly testified that medical exam notes do not authorize or prescribetests, while Banez specifically testified that there was a separate slip that authorized allergen tests and that the medical exam notes signed by Dr. Garcia do not constitute authorization.

The entire indictment cites Dr. Garcia as "authorizing and prescribing" percutaneous allergen tests. However, if there are no written prescriptions as authorized by Dr. Garcia, it would be impossible for Dr. Garcia to be found guilty of authorizing or prescribing these tests. Based on this alone, it illustrates the insufficient evidence for Dr. Garcia's guilt as determined by the jury.

In addition, the court has held that it will overturn the jury's verdict "only if there is no evidence in the record from which the jury could find guilt beyond a reasonable doubt." *United States v. Warner* 2006 WL 2583722, at *5 (N.D. Ill. Sep. 7, 2006); *see also United States v. Diaz*, 87 F.2d 1344, 1351 (7th Cir. 1989) (holding the evidence in the record clearly established both the existence of a conspiracy and that the defendant acted knowingly and intentionally); *U.S. v. Infelise*, 813 F. Supp. 599, 601 (N.D. Ill. 1992) (the court found an inconsistency in the jury's verdict and declared a mistrial). Additionally, if direct evidence "of a defendant's fraudulent intent" is unavailable, "specific intent to defraud may be established by circumstantial evidence and by inferences drawn from examining the scheme itself that demonstrate that the scheme was reasonably calculated to deceive persons of ordinary prudence and comprehension." *Warner*, 2006 WL at *16 (internal quotations omitted). However, if there is not enough evidence to establish circumstantial evidence, inferences should not be drawn. *Id*.

In *Warner*, two defendants were charged in a 22-count indictment with "(1) conspiring to use the resources of the State of Illinois for their personal and financial benefit. . .and (2) devising a scheme to defraud the people of the State of Illinois and the State of Illinois of money. . ." *Warner*, 2006 WL at *2. When the jury convicted the defendants on all counts, the defense moved for a judgment of acquittal or, in the alternative, a new trial, arguing that the evidence was "insufficient to convict them on several of the charges." *Id.* at *3. The court granted the

defendants' motion for acquittal for two of the charges, finding that: (1) the government failed to prove that the defendant was "privy to, and acted upon, information that was not publicly available," and (2) that the government failed to establish one defendant's guilt in connection to a lobbying contract. *Id.* at *39 and *44.

The court found that the evidence did not materialize. *Id.* at *39. As to the first count, although the defendant commissioned a contract to his benefit, he did this based on information that *was* publicly available and the contract was obtained properly. *Id*. (emphasis added). As to the second count, although the defendant disclosed confidential communications, the government did not introduce evidence that established how this caused the defendant to be connected to the lobbying contract. *Id.* at *44. The court held that allowing the defendant to be charged on these counts would be willing to sustain a conviction by "piling inference upon inference." *Id*. (internal quotations omitted); see also *Jones*, 713 F.3d at 347 (evidence cannot be created by speculation or inferences).

Dr. Garcia's case is similar to *Warner* in that evidence failed to materialize and establish guilt; however, the government in *Warner* presented a significant amount of evidence that could have demonstrated the guilt of the defendants', while also tying the defendants' directly to the scheme. This includes evidence such as the defendants' sharing confidential conversations or commissioning contracts to their financial benefits. In contrast, the government in Dr. Garcia's case has not offered one solid piece of evidence to tie Dr. Garcia to the authorization of any prescription allergen test.

In Dr. Garcia's case, what the government was required to show, as outlined in the Indictment, was that Dr. Garcia prescribed and authorized unnecessary diagnostic tests. However, no government witness ever testified that Dr. Garcia personally authorized or

7

prescribed an allergen test and no one ever testified that Dr. Garcia verbally told anyone to authorize or prescribe an allergen test. Without such testimony, the evidence is not sufficient to support Dr. Garcia's conviction of Medicare fraud, namely an attempt to seek payment for percutaneous allergen tests. Without this evidence, it leaves the jury to pile inference upon inference as to whether Dr. Garcia was involved in the scheme, exactly what this court has warned against throughout its' numerous caselaw.

**II. Because handwritten medica exam notes cannot authorize allergen tests, the evidence presented in this case is in direct contradiction to what the jury found, leaving the jury to speculate rather than find guilt beyond a reasonable doubt.**

Again, the Seventh Circuit has warned that although it is tempting to agree with the government's evidence "and think that of course the defendant was probably guilty, such gut feelings and suspicions do not relieve the government of the burden of offering sufficient evidence to prove guilty beyond a reasonable doubt." *Garcia*, 919 F.3d at 499. Furthermore, "a jury cannot speculate its way out of reasonable doubt." *United States v. Katz*, 582 F.3d 749, 752 (7th Cir. 2009) (finding that there was no evidence proving when the defendant was in physical possession of a shotgun and that determining when he might have had contact with the shotgun amounts to nothing but pure speculation). The Government is attempting to bridge the evidentiary gap but offers no evidence to prove that Dr. Garcia authorized the allergen tests. However, without clarifying this to a jury, the jury is left to speculate that handwritten notes do authorize or prescribe allergen tests, which is the exact type of danger the Seventh Circuit warns to avoid.

Speculation is highly evident in this case, as illustrated by the confusion amongst the jury. First, during deliberations, the jurors pushed a question to the judge, asking whether handwritten notes authorize allergen tests. Although the defense requested a response of "no,"

the judge instructed the jury to answer the question based on the facts and evidence presented at trial. Even with (1) no evidence proving Dr. Garcia authorized or prescribed allergen tests and (2) evidence presented at trial illustrating that medical notes do not authorize allergen tests, the jury came back with a guilty verdict for Dr. Garcia. It was shortly after deliberations that a juror reached out to Judge Kennelly to express doubts as to the evidence presented by the Government.

The juror immediately questioned the medical notes signed off by Dr. Garcia as to whether these handwritten notes authorized medical tests, even though evidence at trial clearly indicated that these documents do not. The juror also questioned the Government's use of the word "prescribed," recognizing that no evidence was presented at trial where Dr. Garcia either (1) was the ordering doctor of a test, or (2) admitted in the call transcripts that he himself prescribed tests. *See* Ron Barnec Email (Feb. 12, 2020 at 8:47 p.m.). The juror made note that no evidence was presented to him, either at trial or by his fellow jurors, indicating that Dr. Garcia ever personally prescribed or authorized a test. Without clear indication that this evidence exists, it left the jurors to speculate that the handwritten notes authorized or prescribed the allergen tests at issue.

Overall, the lack of evidence presented by the Government to prove that medical exam notes can authorize allergen tests illustrates that the jury convicted Dr. Garcia based on the speculation of the nurse practitioner's handwritten notes, even though the handwritten notes were disproved as authorizing the allergen tests. Proof beyond a reasonable doubt is necessary, and in this case, there is no evidence at all to prove that Dr. Garcia ever authorized or prescribed the allergen tests. Here, the doubt blatantly exists, as illustrated by the Government's failure to provide evidence and a juror recognizing that the lack of evidence.

**III.    The indictment was constructively amended when the government moved away from proving that Dr. Garcia authorized and prescribed any allergen tests.**

The Fifth Amendment guarantees that an individual may not be tried and convicted of a felony unless he has first been indicted by a Grand Jury. U.S. CONST. amend. V. This requirement prevents a prosecutor from making an individual defend against charges that are unsupported by evidence. Only the Grand Jury "can broaden an indictment through amendment; neither the government nor the court may do so." *Stirone v. United States*, 361 U.S. 212, 215-16 (1960). When a defendant alleges that he was convicted of a crime for which he was not indicted, the court considers it to be a constructive amendment of an indictment. David K. Kessler, *Constructive Amendment of Criminal Indictments*, 1 (Nov. 25, 2012), https://ssrn.com/abstract=1627445.

More thoroughly, a constructive amendment of an indictment "occurs when the government or the district court broadens the possible bases of conviction beyond those specified in the indictment." *United States v. Haskins*, 511 F.3d 688, 692 (7th Cir. 2007). An individual who can establish that he was convicted of a crime for which he was not indicted "is entitled to an automatic reversal of his conviction." *Kessl*er, supra. The Seventh Circuit has held that such broadening violates the Grand Jury Clause of the Fifth Amendment and that a court "cannot permit a defendant to be tried on charges that are not made in the indictment against him." *Haskins*, 511 F.3d at 692 (citing *Stirone*, 361 U.S. 212 (1960)).

When determining constructive amendment issues, the Seventh Circuit utilizes the plain error analysis. The court has concluded that a constructive amendment is reversible under plain error analysis only if the defendant establishes the error affected the defendant's substantial rights. *See United States v. Remsza*, 77 F.3d 1039, 1044 (7th Cir. 1996) (constructive amendment should be reversed only if error constituted "'a mistake so serious that but for it the [defendant]

10

probably would have been acquitted'"). The Seventh Circuit acknowledges that it sets a high bar for reversal on plain error review. *United States v. Pierson*, 925 F.3d 913 (7th Cir. 2019).

In *Pierson*, the defendant raised on appeal that the events at his trial equated to a constructive amendment. 925 F.3d at 917. When officers searched the defendant's house, they discovered two guns, one in the kitchen and one hiding in a car. *Id*. However, defendant's indictment stated "(2) possessing a firearm in furtherance of a drug trafficking crime. . . and (3) possessing a firearm as a previously convicted felon. . ." *Id*. at 917-18. These two counts specified only the gun found in the car as the firearm charged, leaving out any mention of the gun found in the kitchen. *Id.* at 918. Although only the car gun was charged, "the government presented evidence at trial regarding both guns." *Id*. Throughout the trial, the defendant did not object to any evidence introduced about the second gun. *Id*. The jury instructions were approved by both the government and the defendant, and they did not signal that the car gun was the only firearm at issue. *Id.*

Despite the defense's lack of objection, the court in *Pierson* found that "the combination of the evidence and jury instructions added up to a constructive amendment of Pierson's indictment." *Id*. at 921. Specifically, the jury instructions did not limit the jury's attention to just the car gun, leading to the possible issue that the jury could "convict Pierson on grounds outside of the indictment." *Id*. However, although an error *had* occurred, the court found that it was not a "plain error" that warrants reversal because Pierson's "substantial rights" were not affected. *Id*. at 917. This means that the defendant still would have been found guilty regardless of the error. Kessler, supra.

Dr. Garcia's case is distinguishable from *Pierson* in that the Defendant did raise the issue of the constructive amendment and the jury did convict Dr. Garcia outside of the indictment.

11

This affected Dr. Garcia's substantial rights because without proof that Dr. Garcia authorized or prescribed any tests, there is no way for the jury to determine that he was directly complicit in Medicare fraud. In *Pierson*, there was a combination of evidence and jury instructions that led to a constructive amendment of the indictment, whereas in Dr. Garcia's case, there was a complete lack of evidence to even prove up the indictment. Furthermore, the court in *Pierson* recognized that the jury instructions did not limit the jury to focusing on just one gun and instead it caused the jury to consider both guns.

Without the Government proving that Dr. Garcia authorized and prescribed any allergen tests and its failure to offer any evidence, Dr. Garcia was convicted based on facts that were completely outside of the indictment. This ultimately led to the constructive amendment of the indictment, Dr. Garcia being convicted outside the grounds of the indictment, and thus affecting his substantial rights. This error is so clearly evident that even a juror recognized that Dr. Garcia could not be found guilty of the indictment as worded. *See* Ron Barnec Email (Feb. 12, 2020 at 8:47 p.m.).

Whether a constructive amendment occurred is a "fact-intensive question," meaning the court should heavily weigh on the indictment, the facts at trial, the jury instructions, and any other verdict forms. *Pierson*, 925 F.3d at 923; see also *United States v. Kuehne*, 547 F.3d 667, 683-84 (6th Cir. 2008) ("To determine whether a constructive amendment has occurred, therefore, we review the language of the indictment, the evidence presented at trial, the jury instructions and the verdict forms utilized by the jury"). Based on these factors, this Court should find that Dr. Garcia's indictment was constructively amended, violating his substantial rights.

## Conclusion

WHEREFORE, based on the foregoing arguments and authorities, Defendant Dr. Omar Garcia respectfully moves this Court to grant posttrial relief, pursuant to either Fed. R. Crim P. 29.

Respectfully Submitted,

/s/
Nishay K. Sanan

53 West Jackson, Blvd., Suite 1424
Chicago, IL 60604
312-386-7091
nsanan@aol.com
Attorney for Defendant